ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| FÉLIX ALBERT LEBRÓN YERO<br><br>Peticionario<br><br>V.<br><br>FILIBERTO LEBRÓN RODRÍGUEZ, MARÍA ELENA LEBRÓN RODRÍGUEZ, ANICRUZ LEBRÓN RODRÍGUEZ Y OTROS<br><br>Recurridos | TA2026CE00463 | *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2022CV05888<br><br>Sobre: Daños; Partición de herencia |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece el Sr. Félix Albert Lebrón Yero (señor Lebrón Yero o peticionario) y nos solicita que revisemos una *Resolución y Orden Protectora* emitida el 13 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante el referido dictamen, el TPI emitió una Orden Protectora que prohibía, por el momento, cursar requerimientos financieros amplios, históricos o personales ajenos al caudal.

Por los fundamentos que se exponen a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

**I.**

Este caso se originó el 1 de julio de 2022, cuando el señor Lebrón Yero incoó una *Demanda* sobre daños y perjuicios y apropiación ilegal en contra del Sr. Filiberto Lebrón Rodríguez (señor Filiberto Lebrón), la Sra. María Elena Lebrón Rodríguez (señora María Lebrón), la Sra. Anicruz Lebrón Rodríguez (señora Anicruz Lebrón)

---

[1] Entrada Núm. 178 del caso SJ2022CV05888 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 16 de marzo de 2026.

(en conjunto, los recurridos); la Sra. Ana María Rodríguez de Lebrón (señora Rodríguez de Lebrón o viuda) y otros. Tras varios asuntos procesales, el 12 de agosto de 2025, presentó una *Tercera Demanda Enmendada y Solicitud de Sentencia Declaratoria* sobre daños y perjuicios y partición de herencia contra los susodichos demandados en la *Demanda* original, Empresas LR, LLC (Empresas LR) y Feliana PR, LLC (Feliana PR).[2]

Allí, alegó que el peticionario era heredero y partícipe de la sucesión del Sr. Félix Alberto Lebrón Saldaña (señor Lebrón Saldaña o causante), quien falleció el 27 de mayo de 2018. Indicó que el señor Lebrón Saldaña estuvo casado originalmente con la Sra. Zoila Yero, con quien procreó al señor Lebrón Yero, pero que luego contrajo nupcias con la señora Rodríguez de Lebrón. Manifestó que, de este último matrimonio, el causante concibió tres (3) hijos más, a saber, el señor Filiberto Lebrón, la señora María Lebrón y la señora Anicruz Lebrón.

Así las cosas, esbozó que, el 17 de mayo de 2010, el señor Lebrón Saldaña otorgó un Testamento Abierto mediante la Escritura Núm. 9-2010, ante la notaria Zayda Pérez Quiñones. Sostuvo que, en virtud del referido testamento, se le reconoció al peticionario una participación de la cuarta parte en el tercio de legítima estricta y de mejora. De igual forma, indicó que el causante designó a su viuda como albacea, estableció una prohibición absoluta de toda intervención judicial en su testamentaria y expresamente prohibió a sus herederos que ejercitaran acciones judiciales contra los otros herederos o el (la) Albacea, entre otras disposiciones.

Además, alegó que el 17 de diciembre de 2013, el señor Lebrón Saldaña otorgó un poder a favor de los recurridos, intitulado *Poder General, Duradero y Declaración Voluntaria sobre Tratamiento Médico*

---

[2] *Íd.*, Entrada Núm. 134 en SUMAC.

mediante la Escritura Pública Número 12 del 17 de diciembre de 2013, ante el notario público Hermán Cestero Rodríguez. Puntualizó que, entre las facultades que otorgaba este Poder, se encontraba la capacidad de:

a. Comprar y vender bienes muebles, inmuebles y semovientes, sitos en Puerto Rico o en el exterior, así como derechos de acción ('choses in action'), acciones (shares of stock), bonos y obligaciones negociables o no negociables de todo género, así como cualquier participación, derecho o interés en tales bienes o propiedades y obligarse a la entrega de bienes determinados o de dinero en pago o cambio de tal propiedad, o en pago o cambio de un interés en tal propiedad; pudiendo acordar el pago bajo los términos y condiciones que se fijen o acuerden, dando y aceptando las garantías que se tenga a bien, y otorgando al efecto los documentos públicos o privados que la naturaleza del acto exija. Pedir la división de bienes inmuebles poseídos en comunidad con otras personas, bien judicialmente, siguiendo el pleito por todos sus trámites hasta su terminación o hasta donde disponga el Mandatario; y otorgar escrituras públicas de divisiones de comunidad, tomando posesión de la parte material de bienes que se le adjudique al Mandante o recibir en pago de sus condominios otros bienes o dinero, en la forma que crea más conveniente el Mandatario. Aceptar obligaciones a favor del Mandante u obligarlo con respecto a todo género de obligaciones de dar y hacer bien en términos absolutos o con las limitaciones que se acuerden; y retrovender o retractar en los casos en que proceda.
b. Permutar bienes muebles e inmuebles sitos en Puerto Rico o en el exterior por otros de igual o distinta naturaleza, fijando su valor respectivo y abonando o recibiendo la diferencia, en propiedad o en especie, si la hubiere.
c. Condonar en todo o en parte créditos existentes y conceder prórrogas para su cobro. Admitir en pago de deudas bienes de cualquier naturaleza, por el valor que se señale.

Así, señaló que entre las propiedades inmuebles sujetas al mandato de dicha escritura, estaban las siguientes:

A. "URBANA: Solar Número Diez y Siete (17) del plano de inscripción, con una cabida superficial de CUATROCIENTOS SETENTA Y CUATRO PUNTO NOVENTA Y UN [CENTÍMETROS] (474.91), radicado en la Urbanización Méndez López del Barrio Mamey de Juncos, Puerto Rico, en lindes por el NORTE, en diez y siete metros con novecientos treinta y siete milésimas de otro (17.937), con el Solar Número Diez y Ocho (18) del plano de inscripción; por el SUR, en dos distancias de doce metros con seiscientos noventa y dos milésimas de otro (12.692) y en tres metros cincuenta centímetros (3.50), con la Calle Costa; por el ESTE, en dos distancias de diez y siete metros con trescientas milésimas de otro (17.300) y en diez y seis metros (16.00), con don Arturo Collazo y Cruz Saldaña; y por el OESTE, en veintitrés metros con cuatrocientos sesenta y siete milésimas de otro (23.467), con la calle a la cual tiene acceso. Inscrita al folio ciento veintisiete (127) del Tomo Ciento Sesenta y Siete (167), finca número seis mil trescientos sesenta y seis (6,366), Registro de la Propiedad, Sección Segunda de Caguas. Identificación catastral: 227-053-002-18-000.

B. "RÚSTICA: Parcela de terreno radicado en el Barrio Navarro del Municipio de Gurabo, con un área de cinco cuerdas y cincuenta y nueve diez milésimas de otra (5.0059), equivalentes a diecinueve mil seiscientos setenta y cinco con veintiún milésimas (19,675.21) de metros cuadrados. Es de forma irregular similar a una escuadra, y colinda por el NORTE y por el ESTE, con finca de José J. González; por el SUR, en parte con un camino público que la separa de la finca principal de la cual se segrega y en parte con finca de Juan Rivera Rodríguez; y por el OESTE, con dos porciones distintas de la finca principal de la cual se segrega." Inscrita al folio doscientos (200) del Tomo Ciento Siete (107) de Gurabo, finca número tres mil novecientos ochenta y cuatro (3,984). Identificación catastral: 226-000-001-32-000.

Expuesto lo anterior, esbozó que los recurridos han incurrido en varias transacciones sospechosas, con el efecto y propósito de extraer activos del caudal del señor Lebrón Saldaña. A tales efectos, sostuvo que, tras el fallecimiento del causante, el peticionario fue citado por los recurridos, quienes le informaron que el patrimonio no tenía activos y que le ofrecían $3,000.00 mensuales a cambio de que renunciara a su derecho en la herencia.

De otra parte, adujo que la señora Rodríguez de Lebrón, conforme a una evaluación médica, fue diagnosticada con demencia tipo Alzheimer, lo cual le impedía manejar sus bienes y su persona. Ante ello, manifestó que, mediante dictamen en el caso SJ2024CV00469, el Tribunal expidió y otorgó a favor de los recurridos las Cartas Testamentarias de Albaceazgo de la herencia del señor Lebrón Saldaña el 30 de enero de 2024. No obstante, sostuvo que los recurridos no le notificaron o no formaron el inventario de los bienes muebles e inmuebles pertenecientes a la sucesión del finado dentro de los diez (10) días del nombramiento como albacea.

A tales efectos, solicitó del Tribunal los siguientes remedios:

A. Declare con lugar las solicitudes de sentencia declaratoria expuestas.
B. Ordene a los codemandados a rendir un inventario y contabilidad completa de los bienes, cuentas, transacciones, ingresos, gastos de las propiedades del Sr. Félix Alberto Lebrón Saldaña, desde su designación como apoderados y albaceas hasta el presente.
C. Determine que los codemandados conspiraron entre sí y/o con el Testador para privar al Demandante de su herencia correspondiente a una sexta parte de los bienes de su padre.

D. Ordene a los codemandados la restitución proporcional de todos los bienes, rentas, dineros, propiedades y valores "vendidos", ya sea en transacciones reales o simuladas, préstamos, incluyendo los impagados o desviados del patrimonio del causante Lebrón Saldaña.

E. Por albaceas no realizar el inventario e incumplir con la voluntad del testador, se designe un administrador judicial para que administre y tome posesión de los bienes y herencia del causante Félix Alberto Lebrón Saldaña, realice un inventario desde el 2010 hasta el presente.

F. Designe un contador partidor que divida y distribuya entre los herederos, después de contabilizar y colacionar todas las transferencias que puedan haber sido realizadas.

G. Conceda al demandante los daños solicitados.

H. Imponga a los codemandados el pago de las costas y los honorarios de abogados.

I. Otorgue al demandante cualquier otro remedio que en Derecho proceda.

El 2 de octubre de 2025, los recurridos presentaron su *Contestación a Tercera Demanda Enmendada y Solicitud de Sentencia Declaratoria (Ent. 134).*[3] En esencia, negaron las alegaciones de la reclamación. Afirmaron que los albaceas sustitutos presentaron la planilla de caudal relicto al Departamento de Hacienda el 2 de febrero de 2024, dos (2) días luego de haberse expedido las cartas testamentarias a su favor. Manifestaron que le han entregado al peticionario tanto el inventario de bienes como la valorización de estos. Además, señalaron que han citado en reiteradas ocasiones al señor Lebrón Yero, ofreciéndole acceso pleno a la información relacionada con los bienes hereditarios y poniéndola incluso a disposición del contador de su elección. De igual forma, indicaron que el peticionario ha estado impugnando disposiciones testamentarias por los últimos siete (7) años, lo que ha impedido la oportuna y eficiente administración del caudal.

El 3 de octubre de 2025, la señora Rodríguez de Lebrón presentó su *Contestación a Tercera Demanda Enmendada y Solicitud de Sentencia Declaratoria.*[4] En síntesis, negó las alegaciones de la demanda. Afirmó que, mediante dictamen en el caso civil Núm.

---

[3] *Íd.*, Entrada Núm. 153 en SUMAC.
[4] *Íd.*, Entrada Núm. 154 en SUMAC.

SJ2024CV00469, el Tribunal notificó la *Resolución* de las Cartas Testamentarias de Albaceazgo a favor de los recurridos.

El 18 de noviembre de 2025, Empresas LR y Feliana PR presentaron su *Contestación a Tercera Demanda Enmendada y Solicitud de Sentencia Declaratoria (ENT. 134),* en la que negaron las alegaciones de la reclamación.[5] Por otra parte, afirmaron que el 24 de mayo de 2018, el causante, la señora Rodríguez de Lebrón y Feliana PR otorgaron las Escrituras Núms. 148 y 149, intituladas *Deed of Contribution of Real Property in Exchange for Limited Liability Company Membership Interests* ante el notario Héctor Lebrón González. De igual forma, alegaron que el señor Lebrón Saldaña, la viuda y Empresas LR otorgaron un documento intitulado *Terminación de Contrato de Compraventa de acciones de las acciones emitidas y en circulación de Villa Blanca Realty Inc.-Fase Final.*

Así pues, el 24 de diciembre de 2025, el señor Lebrón Yero presentó una *Moción Informativa.*[6] Allí, informó que, el 22 de diciembre de 2025, cursó citaciones a UBS Financial Services (UBS) y a Merrill Lynch Wealth Management (Merrill Lynch) para que produjeran los estados de cuenta anuales de inversión desde el 2012 de los recurridos.

En respuesta, el 9 de enero de 2026, los recurridos presentaron su *Objeción a Citaciones (ENT. 170) y Solicitud de Orden Protectora.*[7] Sostuvieron que la documentación solicitada era información financiera personal que no tenía relación alguna con el asunto en controversia. A su vez, indicaron que el derecho sucesoral no le brindaba derecho al peticionario a requerir información financiera de los recurridos en su carácter personal.

---

[5] *Íd.,* Entrada Núm. 166 en SUMAC.
[6] *Íd.,* Entrada Núm. 170 en SUMAC.
[7] *Íd.,* Entrada Núm. 172 en SUMAC.

Pese a lo expuesto, alegaron que produjeron una cantidad extensa y sustantiva de documentos dirigidos específicamente a la información pertinente al caudal relicto y que obraba en manos del señor Lebrón Yero. Señalaron que acceder al historial financiero completo de los recurridos desde el año 2012 no respondía a una necesidad probatoria legítima, sino a una expedición de pesca. Por lo cual, entre otros asuntos, solicitaron que se emitiera una orden protectora, en la que se prohibiera cursar requerimientos financieros amplios, históricos o personales ajenos al caudal.

El 2 de febrero de 2026, el peticionario presentó su *Oposición a "Objeción a Citaciones (Ent. #170) y Solicitud para que se dicte Orden Protectora"*.[8] En esencia, adujo que las citaciones cursadas a UBS y Merrill Lynch no perseguían "hurgar" en la vida privada por curiosidad, sino obtener prueba en manos de custodios neutrales relacionada a las alegaciones medulares de la demanda, tales como la reducción del caudal, colación, donaciones encubiertas, simulación y rendición de cuentas. Por lo cual, solicitó que denegara la petición de orden protectora y que ordenara la producción de los estados de cuenta anuales de inversión desde 2012 de los recurridos.

El 18 de febrero de 2026, los recurridos presentaron una *Réplica a Oposición a "Objeción a Citaciones (Ent. 170) y Solicitud para que se dicte Orden Protectora" (Ent. 174)*.[9] Allí, reiteraron que la información financiera personal de los recurridos era irrelevante e impertinente al pleito sucesoral de autos. Indicaron que el peticionario pretendía adquirir los estados de cuenta de inversiones personales sin antes agotar la fuente primaria del caudal ni demostrar deficiencia alguna en la producción ya realizada. Por lo que, arguyeron que las citaciones respondían a una exploración especulativa y una expedición de pesca.

---

[8] *Íd.*, Entrada Núm. 174 en SUMAC.
[9] *Íd.*, Entrada Núm. 177 en SUMAC.

Atendidos los escritos, el 13 de marzo de 2026, el TPI emitió una *Resolución y Orden Protectora.*[10] Mediante el aludido dictamen, juzgó que el señor Lebrón Yero no precisó qué fondos o bienes pertenecientes al caudal se encontraban presuntamente fuera del inventario. Por lo cual, declaró Ha Lugar la moción *Objeción a Citaciones (ENT. 170) y Solicitud de Orden Protectora* presentada el 9 de enero de 2026. En consecuencia, emitió una Orden Protectora que prohibía, "por el momento, requerimientos financieros amplios, históricos o personales ajenos al caudal".

Inconforme, el 15 de abril de 2026, el peticionario acudió ante nos mediante el presente recurso de *certiorari*, en el que le atribuyó al TPI la comisión del siguiente error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL DECLARAR HA LUGAR LA OBJECIÓN A LAS CITACIONES Y EXPEDIR UNA ORDEN PROTECTORA A FAVOR DE LOS RECURRIDOS, IMPIDIENDO EL DESCUBRIMIENTO DE LOS ESTADOS DE CUENTA ANUALES DE INVERSIÓN REQUERIDOS A MERRILL LYNCH Y UBS, AL CONCLUIR QUE EL PETICIONARIO NO HABÍA PRECISADO QUÉ FONDOS O BIENES DEL CAUDAL PRESUNTAMENTE NO ESTABAN INCLUIDOS EN EL INVENTARIO, CUANDO PRECISAMENTE LAS CITACIONES PROCURABAN OBTENER EVIDENCIA PRIMARIA Y OBJETIVA PARA IDENTIFICAR, RASTREAR Y CORROBORAR LA EXISTENCIA, COMPOSICIÓN, VALORIZACIÓN Y POSIBLE DESVÍO DE ACTIVOS PERTENECIENTES AL CAUDAL RELICTO.**

Mediante su único señalamiento de error, arguyó que el TPI incidió al declarar ha lugar la objeción a las citaciones dirigidas a Merrill Lynch y UBS y al emitir una orden protectora bajo el fundamento de que el señor Lebrón Yero no precisó qué fondos o bienes pertenecientes al caudal se encontraban fuera del inventario. Sostuvo que esto invertía indebidamente la lógica del descubrimiento de prueba, toda vez que exigía una precisión concluyente del contenido o destino de activos que precisamente se intentaba corroborar mediante la información solicitada.

---

[10] Ver nota al calce Núm. 1.

Así, señaló que las citaciones no perseguían un acceso indiscriminado, sino que se dirigían a dos custodios específicos y solicitaban una categoría limitada de documentos respecto a las alegaciones de la reclamación. Por lo que, arguyó que el TPI no podía excluir la documentación solicitada bajo una concepción estrecha y prematura de pertinencia. De otra parte, peticionó que ordenáramos el cumplimiento de lo solicitado en la *Moción ordenando que [la] demandada responda a [las] preguntas de deposición, solicitando sanciones y sometiendo para [el] récord [la] transcripción* presentada por el peticionario.

Por su parte, el 27 de abril de 2026, los recurridos presentaron su oposición al recurso y una solicitud de desestimación, en la que manifestaron que el TPI no abusó de su discreción al emitir la Orden Protectora.

En esencia, manifestaron que el señor Lebrón Yero no demostró que la información solicitada era pertinente al asunto en controversia. Señalaron que el peticionario nunca identificó una transacción específica no explicada, una discrepancia concreta ni una omisión particular en la documentación entregada que hiciera indispensable acceder a cuentas personales y ajenas al caudal. De igual forma, sostuvieron que era improcedente que el señor Lebrón Yero solicitara que se ordenara al TPI resolver una moción a la cual no habían tenido oportunidad de oponerse y que aún quedaba pendiente de adjudicación.

Por lo cual, solicitaron que se declarara Con Lugar su petitorio desestimatorio y, en consecuencia, se desestimara el recurso por falta de jurisdicción. En la alternativa, adujeron que correspondía denegar el recurso de entenderse que no procedía la desestimación, ya que las razones esbozadas en el *certiorari* eran insuficientes bajo los criterios de la Regla 52.1 de Procedimiento Civil, *infra*, y de la Regla 40 del Tribunal de Apelaciones, *infra*.

El 28 de abril de 2026, el señor Lebrón Yero presentó una *Breve Réplica a Oposición de Expedición de Certiorari y Solicitud de Desestimación,* en la que reiteró los planteamientos del recurso de epígrafe. No obstante, la misma se tiene por no puesta por no haber sido previamente autorizada por este Tribunal.

**II.**

**A. *Certiorari***

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *McNeill Healthcare LLC v. Municipio de Las Piedras,* 206 DPR 391, 404 (2021); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita taxativamente las instancias en que procede expedir el auto de *certiorari* en asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio de Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et al.,* 202 DPR 478 (2019). Así, procede la revisión de resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra,* o la denegación de mociones dispositivas. Como excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Si el asunto interlocutorio no se encuentra dentro de estas instancias, el Tribunal carece de autoridad para intervenir.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), R. 40, dispone los criterios que

orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari,* al considerar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari,* no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra*, pág. 336. En tal caso, este Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare LLC v. Municipio de Las Piedras, supra*, pág. 405.

### B. Manejo del caso

El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos requieren que los jueces y las juezas del Tribunal de Primera Instancia gocen de gran flexibilidad y discreción para lidiar con el manejo del caso. *BPPR v. SLG Gómez-López,* 213 DPR 314, 333-334 (2023); *In re Collazo I,* 159 DPR 141, 150 (2003). A saber, el foro primario posee autoridad suficiente para conducir los asuntos litigiosos en la forma que su buen juicio le indique. *BPPR v. SLG Gómez-López, supra; Ortiz Rivera v. Agostini*, 92 DPR 187, 193-194 (1965). En tal sentido, la Regla 37 de Procedimiento Civil, *supra*, R. 37, rige lo concerniente al manejo del caso con el objetivo de controlar los procedimientos y darle mayor

fluidez al movimiento del caso. Sobre este aspecto, el máximo foro judicial ha resuelto que:

> La deferencia al juicio y a la discreción del foro sentenciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012).

Por último, como parte de su discrecionalidad en el manejo del caso, los tribunales de instancia poseen amplia discreción para regular el ámbito del descubrimiento de prueba, con el fin de que se garantice una solución justa, rápida y económica del caso. *Rivera et al. v. Arcos Dorados et al., supra*, pág. 203; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 496 (2022).

### III.

Mediante su único señalamiento de error, el señor Lebrón Yero arguyó que el TPI incidió al declarar Ha Lugar la objeción a las citaciones cursadas a UBS y Merrill Lynch y, por consiguiente, emitir una Orden Protectora a favor de los recurridos. Luego de analizar los planteamientos de las partes, así como el legajo apelativo, concluimos que al peticionario le asiste la razón. Nos explicamos.

El 13 de marzo de 2026, el TPI emitió una Orden Protectora que, a todos los efectos, prohibía cursar, "por el momento", requerimientos financieros amplios, históricos o personales ajenos al caudal. Ahora bien, a pesar de que, en atención al lenguaje antes citado, no se adjudicó definitivamente el asunto en controversia, no podemos avalar dicha determinación. Las alegaciones de una posible disposición de los bienes del caudal hereditario constituyen un asunto que debe atenderse con premura. Por lo cual, el foro primario debió haber celebrado una vista evidenciaria para atender las cuestiones relativas a la integridad del inventario, considerar los

argumentos sobre los requerimientos de información en poder de terceros y decidir sobre su procedencia.

Asimismo, el peticionario, en su recurso, nos peticionó que ordenáramos el cumplimiento de lo solicitado en la *Moción ordenando que [la] demandada responda a [las] preguntas de deposición, solicitando sanciones y sometiendo para [el] récord [la] transcripción*. No obstante, tras examinar el expediente apelativo, entendemos que dicha moción todavía no ha sido adjudicada por el foro primario, por lo que dicho reclamo se encuentra a destiempo.

Esbozado lo anterior, colegimos que el TPI incidió al no atender y adjudicar con premura los planteamientos sobre cierta información que puede resultar relevante en una controversia en cuanto a la integridad del caudal hereditario. En consecuencia, ordenamos la celebración de una vista evidenciaria a esos efectos. A su vez, determinamos que resulta prematuro el petitorio del señor Lebrón Yero en el cual solicitó, entre otros aspectos, que ordenáramos a la señora Rodríguez de Lebrón comparecer y responder a las preguntas de la deposición.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la *Resolución y Orden Protectora* recurrida. Se devuelve el caso al TPI para que continúe con los procedimientos de conformidad con lo aquí dispuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones